THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BURTON, Defendant-Appellant.

(No. 55498; ▇▇▇▇▇▇▇▇

First District—July 26, 1972.

Victor G. Savikas, of Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and S. Paul Naselli, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, James Burton, was indicted for the offense of murder. After a trial by jury in 1963 he was convicted and sentenced to serve a term of 20 to 30 years in the penitentiary. In an opinion filed on December 19, 1969, the Supreme Court reversed and remanded the cause for a new trial on the ground that the defendant's privilege against self-incrimination was violated by remarks of the prosecutor in the closing argument which called to the jury's attention the defendant's failure to testify. *People v. Burton*, 44 Ill.2d 53, 254 N.E.2d 527.

Upon remand, new counsel was appointed, and after another trial by jury the defendant was found guilty as charged and sentenced to serve 15 to 25 years in the penitentiary. On appeal from this conviction he contends (1) that he was not proven guilty beyond a reasonable doubt, (2) that improper and incompetent evidence was admitted, (3) that he was denied his right to confront the witnesses against him by reason of the State's use of transcripts from the previous trial, and (4) that improper and prejudicial remarks made by the prosecutor during closing argument deprived him of a fair trial.

We consider first the contention that the defendant was deprived of a fair trial and of his right to confrontation when testimony given at the first trial by Flora McElrath Bey and Willie Kersh who were not present at the second trial was read to the jury. Prior to trial, the State filed a written motion for leave to introduce into evidence the transcribed testimony of four unavailable witnesses who had testified on its behalf at the defendant's first trial. In the motion it was alleged that the State had made a diligent but unsuccessful attempt to locate the four witnesses. At a hearing on the motion Edward Powell, an experienced police investigator for the State's Attorney's office, testified that in the latter part of March, 1970, he was assigned to locate Flora McElrath Bey, Helen Burton, and James Willie Kersh. In seeking to find them he examined telephone directories and contacted representatives of the Post Office and of the Election Commission. He further visited the last known addresses of the prospective witnesses and conducted a search in the general community near these residences. He conferred with the long time resident owner of the building where Miss Bey, according to the last report, had lived, and with the Reverend McCoy who resided at the last known address of Willie Kersh. This investigation lasted 10 to 14

days, but did not lead to a discovery of the whereabouts of either Miss Bey or Kersh.

■■ The Supreme Court in *Bergen v. People*, 17 Ill. 426, at 427, set forth the following rule, "Where a witness has testified on a former trial of the same cause, or where the same matter was in issue, between the same parties, and the witness has since died, what such witness swore to on the former occasion may be given in evidence. Here the witness was not dead, but beyond the jurisdiction of the court by the procurement of the defendant; and we think the rules of evidence do not permit, in such case, the admission of the testimony given on the former occasion." In *People v. Holman*, 313 Ill. 33, 144 N.E. 313, the Court recognized that the scope of the rule in *Bergen* should be changed; but it did not adopt the rule as urged by the appellant that the transcript of testimony taken on a former trial of the case should be admitted in evidence and read to the jury because the record did not show the existence of due diligence. The Court stated on p. 36, "It cannot be said that the writing of two or three letters is sufficient diligence to procure the whereabouts and attendance of a witness."

■■■ The reasons for permitting the admission of testimony from an earlier proceeding of a person who has died are (1) that the testimony given under oath, in the presence of the accused and subject to cross-examination is trustworthy and reliable, (2) that the opportunity for cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement, and (3) that the introduction of such testimony is necessary to ensure that substantial justice is done. The same reasons apply equally when the witness has become incompetent to testify due to mental illness or when the witness cannot be located after diligent search. Recent case law has indicated that prior testimony given by a witness who became incompetent to testify due to mental illness was admissible. (See *People v. Cox*, 87 Ill.App.2d 243, 230 N.E.2d 900.) The aforementioned rule in like manner should be extended to the situation where a witness cannot be found after diligent search.

This extension of the rule is consistent with the practice in the Federal Courts and in most other jurisdictions. In the case of the *United States v. Rhodes*, 398 F.2d 655, the Court stated at page 657:

"Under the generally accepted rule, if a witness who testifies at a trial is unavailable to testify at a retrial of the same cause due to death, absence or other like reason, his testimony at the first trial is admissible at the second trial as an exception to the hearsay rule."

See: C. McCormick, Handbook of the Law of Evidence, pars. 230-238 (1954), 23 C.J.S. Criminal Law par. 893, 29 Am.Jur.2d Evidence par. 755.

■■ The introduction of the transcribed testimony from a former proceeding against a defendant in a criminal prosecution does not contravene the accused's right to confrontation where at the earlier proceeding there was a full and adequate opportunity for cross-examination and where a good faith effort to procure the attendance of the witness has been made. In *Barber v. Page*, 390 U.S. 719, the Supreme Court held that an accused's right to confrontation was violated when the transcript of testimony given at a preliminary hearing by a co-defendant who at the time of trial was incarcerated in a Federal prison located outside the jurisdiction was introduced into evidence at trial without an attempt by the prosecution to secure the presence at trial of the co-defendant. The Court recognized, "It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." (390 U.S. at 722.) The Court then in considering when a witness is unavailable stated, "In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." (390 U.S. at 724-5.) Implicit in the statement of the Court is the proposition that the transcript would have been admissible had the prosecution made a good faith effort to procure the witness's attendance.

The defendant argues (1) that there was not an adequate showing of due diligence on the part of the State to locate these witnesses and (2) that he did not have an opportunity to adequately cross-examine the witnesses at the previous trial.

The question of what actions constitute reasonable diligence and a good faith effort to locate and secure the presence in court of a witness depends on the facts and circumstances of each particular case. In *People v. Holman*, 313 Ill. 33, 144 N.E. 313, the mailing of three letters, the last of which was sent three months prior to trial, was held insufficient. In the instant case, we are of the opinion that the State has shown a good faith effort to locate Flora Bey and James Kersh. An investigator contacted election officials and representatives of the Post Office, visited the prospective witness's last known addresses, and conferred with persons at those addresses and in the community.

■■ The defendant further argues that the Court erred in admitting the transcripts of testimony from the first trial without considering the competency of his appointed attorney at the earlier trial. It is urged that "After the Court had indicated its reasons for admitting the transcript testimony, counsel for defendant indicated that further objection

against the use of the testimony was that the defendant's attorney at the first trial was incompetent and inadequate and accordingly defendant was denied his right to cross-examine the witnesses adequately at the first trial." We have examined the transcript of evidence given by the two witnesses and are satisfied that the defendant had an adequate opportunity for cross-examination and that the witnesses were thoroughly and competently questioned.

We turn next to the three arguments relating to the admission of evidence. (1) Anna Gaff, the decedent's daughter, testified that on the day of the killing she visited her father who gave her a ten dollar bill from a large roll of money. She estimated that the roll contained three to four hundred dollars and indicated the size of the roll to the jury. She stated that she had seen her father with a similar roll of bills on prior occasions, and she was subsequently asked, "By the way, if you know, as best you can describe, what denominations were kept in that roll of bills that he kept?" She answered, "Tens, twenties." It is urged "In reality, without proper foundation having been laid, Anna Gaff was permitted to give her opinion as to the amount of money the deceased carried on his person."

■■ As a general rule a lay witness cannot give an opinion or draw inferences from the facts. A non-expert, nevertheless, can express an opinion based on his observations where it is difficult or impossible for him to reproduce for the jury the totality of the conditions perceived and where the opinion given is one that men in general are accustomed and capable of making, comprehending, and understanding. (*Carter v. Carter*, 152 Ill. 434, 28 N.E. 948, opinion on rehearing 152 Ill. 434, 38 N.E. 669; *People v. Lloyd*, 178 Ill.App. 66.) It is recognized under this exception to the opinion rule that a non-expert may testify to the size, weight, color, and value of property, and to time, distance, speed, and the like, *People v. Berkman*, 307 Ill. 492, 139 N.E.91.

■■ In the instant case the amount of money in the roll was dependent upon the number and denominations of the bills incuded. Mrs. Gaff indicated to the jury the approximate diameter of the roll, but it would have been difficult or impossible to accurately describe how tightly the bills were rolled and compressed. Mrs. Gaff further testified that the roll contained ten and twenty dollar bills. We are satisfied that her opinion had an adequate factual basis and that under the rules stated her estimate was properly admitted.

■■ (2) Detective William Miller of the Chicago Police Department, testified that the defendant, when arrested possessed $67.00 in cash and three receipts dated on the date after the killing for payments

totalling $242.67. With reference to the receipts Miller stated, "I asked him [the defendant] where he received the money to pay off these receipts and he told me he had borrowed money from his brother-in-law, James Willie Kersh." It is asserted that the defendant was prejudiced by the introduction into evidence of the contents of the receipts which it is argued were inadmissible hearsay statements. This assertion is without merit for three reasons. First, no objection was interposed with reference to this testimony, and the failure to present a proper and timely objection generally constitutes a waiver of any error. (*People v. Adams*, 41 Ill.2d 98, 242 N.E.2d 167.) Second, the contents of the receipts were the basis of a conversation between the defendant and Miller in which the defendant admitted by implication the making of the payments. Third, the inference to be drawn from the receipts that the defendant had a sum of money in excess of $300.00 on the day after the killing was established elsewhere in the record by two witnesses for the prosecution and by the admission of the defendant while testifying on his own behalf.

■■■ (3) Helen Burton, the defendant's wife, testified that between 11:00 P.M. and 12:00 A.M. on the evening of the killing, her husband returned to their apartment. She had a conversation with him and observed him counting out $315.00 in cash. It is argued that this testimony violated Section 155—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, Ch. 38, par. 155—1) which prohibits with certain exceptions, not pertinent here, testimony in a criminal proceeding by one spouse concerning any communication made by the other. An act as well as a statement can constitute a communication; however, the limited marital privilege given in Section 155—1 extends only to communications, admissions, and conversations during coverture which are confidential. (*People v. Palumbo*, 5 Ill.2d 409, 125 N.E.2d 518.) A statement made in private from one spouse to the other is presumed to be confidential unless, as here, the contrary is evident. An act on the other hand even when done in the presence of the other person, is not necessarily intended to be confidential.

■■ Little evidence is included in the record concerning the circumstances under which the defendant counted out the money in the presence of his wife due principally to the fact that no objection was raised to the admission of the testimony; however, in view of the fact that the defendant counted out the same amount of money in the presence of his brother-in-law at 6:00 A.M. on the following morning, we cannot conclude that the act of counting the money was intended as a confidential communication protected by the statute. (See: *United States v. Lewis*, 433 F.2d 1146.) Moreover, we must note that Mrs. Burton's testimony

concerning her husband's possession of a large sum of money after the time of the killing was cumulative since the defendant's brother-in-law and Detective Miller presented similar evidence.

It is also contended that the defendant was denied a fair trial because of improper and prejudicial remarks made by the prosecution during closing argument. This contention stems from the following portion of the rebuttal argument of the prosecution:

"He [defense counsel] talked about people and an incompetent lawyer and prosecutorial remarks. He has admitted that this case is back here on a retrial. Twelve people found him guilty of murder and I am telling you that no technicality will let him walk out of here again. Whatever the technicality is, I am asking you not to let him walk out of here again."

It is urged that even though the defense counsel did not object to these remarks, the Court had an affirmative duty to instruct the jury to disregard them because the prejudice involved is plain. The question of the prior conviction was not raised initially by the prosecution, but was injected into the cause by the defense when it urged in closing argument:

"And in 1963, seven long years ago, he was found guilty of murder. Seven long years. How do you buy back seven years? How do you buy back seven days? He wept. He was locked up like a rat and a cat in a cell for seven long years. Yet this black man with no money, with limited education, fought with everything he knew how to fight with to bring this matter back into a court of justice * * * There was a new trial. And he stands here today, as the Court instructed you, as an innocent man, innocent of the crime after seven long, dirty, filthy years in a hole * * * That takes a lot of tenacity, a lot of sweat, a lot of tears. Why? Because J.C. Burton was innocent then, and he is innocent now."

██ ██ It is well settled that the defense cannot invite reply in its closing argument and thereafter complain on appeal that it was prejudiced by the rebuttal which followed. (*People v. Lewis*, 25 Ill.2d 442, 185 N.E.2d 254.) Comments and argumentation made by the prosecution during the closing argument without objection warrant reversal of a conviction only when it is reasonably clear that the remarks influenced the jury in a manner that resulted in substantial prejudice to the accused. (*People v. Stahl*, 26 Ill.2d 403, 186 N.E.2d 349.) At the conclusion of the argument the jury was instructed to disregard any remarks in closing argument which were not based on the evidence. We do not condone the argumentation of either counsel; but after a review of the record we cannot say that the remarks of the prosecutor were such as to warrant reversal.

It is finally contended that the defendant was not proven guilty beyond a reasonable doubt. On June 7, 1963, Clemens Tappe, a 76-year-old man, was killed in his first floor apartment located at 435 West Sullivan Street in the City of Chicago by repeated blows to the head with a blunt object and with a sharp cutting edge. There was no indication in the apartment of a forcible entry and no money was found on the person of the decedent or in the premises.

Anna Gaff, the decedent's daughter, testified that her father usually carried a large roll of money with him and that on the day of the killing he had a roll of bills which she estimated to contain three to four hundred dollars. She further stated that when she visited her father he always required her to identify herself before he opened the apartment door.

According to the testimony of members of the Williams family who lived on the second floor of the building where the decedent resided, the defendant visited their home at approximately 9:00 P.M. on the evening of the crime. He repaid a loan of $3.00 and left after about 15 minutes. He did not immediately leave the building, but was seen by ten year old Tyrone Williams knocking at the door of the decedent's apartment. Between 9:30 P.M. and 9:45 P.M., Mr. Williams left the apartment and heard Tappe speaking in a loud voice. Near 10:00 P.M. Mrs. Williams heard the sound of something heavy falling to the floor in Tappe's apartment beneath her. She heard a noise like sticks cracking. When she knocked at the door, the lights went out, and she ran across the street to a neighbor's home. Upon her return she smelled gas emanating from the Tappe apartment and she removed her children from the building. At about 10:15 P.M. the police were called. Mrs. Williams also testified that it was the habit of the deceased only to allow persons whom he recognized into his apartment.

Helen Burton, the defendant's wife, testified that on June 7, 1963, her husband owned a Dodge automobile and that payments were overdue. She stated that late in the afternoon of the day in question, her husband who earned a take home salary of $59.00, returned home and gave her $20.00. He left the apartment at 9:00 P.M. or 9:30 P.M. and when he returned at 11:00 P.M. or 12:00 A.M. she observed him count out $315.00 in cash.

James Willie Kersh, the defendant's brother-in-law, testified that at about 6:00 A.M. on June 8, 1963, the defendant came to his home and counted out $315.00 in cash in his presence. The defendant said to him, "I told you that she would let me have it." About a week earlier the defendant had indicated that he would borrow money from Flora Bey to make a car payment. Kersh denied that he had loaned $315.00 to the defendant. Even though the defendant in the past had told Kersh about

his winnings in gambling, he did not say on June 8, 1963, that he had won the $315.00 at a dice game. Flora Mae McElrath Bey testified that about a week prior to the crime the defendant asked to borrow a sum of money from her. She stated that she did not make a loan to him.

Detective William Miller testified that he placed the defendant under arrest for the murder of Clemens Tappe in the afternoon of June 8, 1963. He searched the defendant and found $67.00 in cash and three receipts for payments made on that day totalling $242.67. The defendant gave inconsistent explanations as to how he obtained the relatively large amount of money that was in his possession after the crime. The defendant first told Miller that he had borrowed the money from James Kersh. Subsequently, when confronted with a denial of the loan by Kersh, he stated that he had won the money in a dice game, but was unable to remember where it was held or who took part in the game. The defendant further stated that he knew Tappe and had borrowed money from him in the past and that the two of them had discussed his moving into Tappe's apartment if the decedent returned to his homeland.

The defendant, James Burton, testified on his own behalf and admitted visiting the Williams apartment on the night in question and knocking on the apartment door of Clemens Tappe whom he had known for six or seven years. He stated, however, that Tappe did not respond to the knocking and that immediately thereafter he left the building. He then went to a "crap game" where he won $500 to $600. He denied telling James Kersh that he had borrowed money from Flora Bey, but admitted informing Detective Miller that he had borrowed money from Kersh. He explained that he made an initially false statement to Miller because he had been arrested on prior occasions for gambling. He denied committing the crime.

■■ The evidence presented against the defendant was entirely circumstantial. It is urged that it failed to establish (1) that the decedent had any money on the night of the killing, (2) that defendant entered Tappe's apartment, and (3) that the defendant obtained the money which he possessed from Tappe. The standard which must be applied in reviewing the sufficiency of the evidence to sustain a conviction based exclusively on circumstantial evidence was set forth in *People v. Hooper,* 364 Ill. 320 at 325, 4 N.E.2d 490 at 492:

"In order to warrant a conviction, circumstantial evidence must be of such a conclusive nature as to lead, on the whole, to a satisfactory conclusion, and such as to produce, in effect, a moral certainty that the accused, and no one else, committed the crime, and it must be such

that circumstances proved cannot, upon any reasonable theory, be true and the defendant innocent."

Even though there were no eyewitnesses to the killing of Clemens Tappe, the jury was convinced of the defendant's guilt after viewing the evidence as a whole. Each link in the chain of circumstantial evidence when taken by itself may not be conclusive of the defendant's guilt, but when all the separate facts are combined, they make a case which cannot be reconciled in our opinion upon the hypothesis of innocence. The victim, Clemens Tappe, customarily admitted into his apartment only persons that he knew, and an examination of the apartment subsequent to the killing revealed no indication of a forced entry. On the day of the killing the decedent possessed a $300 to $400 roll of cash, but no money was found on the premises after the commission of the crime. The defendant who had known Tappe for a number of years, was seen at the door to the apartment just prior to the killing. Subsequent to the killing the defendant had a large sum of money. He testified that he had won the money gambling, but this was inconsistent with his initial statement to the police. The defendant in the past had told his brother-in-law of his successes at dice, but on June 8, 1963, he made no reference to purportedly winning $500 to $600. In weighing the evidence, the jury is not required to disregard the natural inferences that flow normally from the evidence heard by them. (*People v. Kelley*, 29 Ill.2d 53, 193 N.E.2d 21.) Based on the entire record we are satisfied that the verdict of the jury was sustained by the evidence.

The defendant was given a fair trial and proven guilty beyond a reasonable doubt. The judgment of the Circuit Court is therefore affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.