THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY KENT, Defendant-Appellant.

(No. 57567;

First District (4th Division)—October 17, 1973.

James J. Doherty, Public Defender, of Chicago (Bradley Harris and John T. Moran, Jr., Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and John M. Cutrone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial the defendant, Terry Kent, was found guilty of unlawful use of weapons: Possession of a shotgun with a barrel less than 18 inches (Ill. Rev. Stat. 1969, ch. 38, par. 24—1(a)7). He was sentenced to the Illinois State Penitentiary for a term of two to five years. On appeal, the defendant presents the following issues for review:

1. Whether the prosecutor's closing argument constituted prejudicial error.
2. Whether the prosecutor's introduction of another criminal charge against the defendant constituted prejudicial error.
3. Whether the trial judge's voir dire panel instructions constituted reversible error.
4. Whether the State failed to prove the defendant guilty beyond a reasonable doubt.

At about 2:30 A.M. on November 18, 1971, Chicago Police Officers Michael Bass and Walter Kupetis stopped a car driven by the defendant, Terry Kent, for making a left turn without giving a signal. While waiting for Kent to produce his driver's license, Officer Bass observed the

barrel of a rifle or shotgun underneath a coat lying on the front seat of the car between Kent and his passenger, David Johnson. Subsequently the gun was identified as a .12 gauge J. C. Higgins pump, sawed-off shotgun. It contained three shells.

At trial the defendant testified that the gun belonged to his passenger, David Johnson. Kent testified that earlier on the night of his arrest he had been at a tavern that was robbed by Johnson, who then "ordered" Kent to drive him around. Kent further testified that he had told a detective shortly after his arrest that he "didn't know anything about this" and that it was not until January 7, 1971 that he "got a chance" to tell anyone that he was a captive of Johnson at the time of his arrest. On cross-examination, he denied telling the arresting officers that he had obtained the gun from a man down the street for $20.

The first point Kent raises in his appeal is that the prosecutor's closing argument constituted prejudicial error because repeated comments were made on the fact that the defendant did not assert his defense of compulsion until he had been in jail for seven weeks. He objects to the following statements made by the prosecutor in closing argument:

> "What he does is allows himself to be taken, like any good citizen would be taken who is a victim, allows himself to be handcuffed, transported into a police station without saying a word, or just listening to a police officer saying tell it to the judge, he allows himself to be taken before a judge, where he says nothing, to be held in jail for six or seven weeks, says nothing. And finally he says something to the judge that he was a victim. Here is a man that sat over in jail and said nothing and now eight weeks later—think of the defense. Any why [sic] is it a good defense to him? Because at this point now Johnson is a fugitive from justice."

Kent contends that since a defendant has the right to remain silent upon arrest, it was error for the prosecutor to imply to the jury that he had a duty to speak and that his failure to do so indicated guilt.

It is quite true that a defendant has the right to remain silent upon being taken into custody (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 103—2 (a)), and that the exercise of that right shall not be subject to comment at trial. (*People v. Lewerenz* (1962), 24 Ill.2d 295, 181 N.E.2d 99.) However, at issue here is not the defendant's right to remain silent but his credibility stemming from various explanations of how he happened to be driving a car with a sawed-off shotgun next to him.

The evidence clearly indicates that Kent did not exercise his right to remain silent but voluntarily made a statement to the police. There are two versions of that statement: According to Kent's testimony, he told the police that he "didn't know anything about this"; according to the

arresting officers, Kent stated that he had purchased the gun. Even if Kent's version is accepted, his initial denial of any knowledge of the events in question and his later assertion that he was a captive is a conflict by omission. If the testimony of the arresting officers is accepted, there is a direct conflict in Kent's explanations.

To support his contention, Kent relies upon *People v. McVet* (1972), 7 Ill.App.3d 381, 287 N.E.2d 479, in which the court stated that cross-examination regarding the defendant's silence upon arrest was error capable of suggesting to the jury that defendant had a duty to speak and that his failure to do so indicated guilt. However, that case is clearly distinguishable from the situation presented by Kent. In *McVet* the colloquy pertinent to defendant's silence after he was apprehended was as follows:

> "Q. Did you ask the police what the problem was? Did you say anything to him?
> A. No.
> Q. You never said a word to him, Mr. McVet?
> A. I didn't say anything.
> Q. You never said nothing to him about your innocence in the police station?
> A. They never questioned me."

The foregoing exchange illustrates that the defendant remained silent when he was apprehended. By contrast, Kent did not remain silent: He voluntarily gave some information to the arresting officers but did not tell anyone that he was the victim of a crime until some seven weeks after he was arrested. Thus, Kent's reliance upon *McVet* is without merit.

■■ Statements based on facts properly in evidence, or on legitimate inferences therefrom, are proper comment in closing argument. (*People v. Sinclair* (1963), 27 Ill.2d 505, 190 N.E.2d 298; *People v. Winstead* (1967), 90 Ill.App.2d 167, 234 N.E.2d 175.) We conclude that the contradictory statements given by Kent raised the issue of his credibility and that it was fair comment for the prosecutor to challenge his credibility based upon facts in evidence. *People v. Fort* (1970), 119 Ill.App. 2d 350, 256 N.E.2d 63; *People v. Jones* (1970), 125 Ill.App.2d 168, 260 N.E.2d 58.

Secondly, Kent contends that the introduction of another criminal charge pending against him by the prosecutor constituted prejudicial error. This contention is based solely upon the following question asked defendant on cross-examination:

> "MR. LEVINSON: When you were in jail you were in jail for the robberies and the U.U.W., is that correct?

MR. HIMEL: Your Honor, I am going to object at this time.

THE COURT: Objection sustained."

This unanswered question does not constitute reversible error. Any suggestion to the jury from the State's question that the defendant had been charged with committing the same armed robbery of which he later claimed to be a victim was obviated by the prompt action of the judge in sustaining the objection. *People v. Farmer* (1963), 28 Ill.2d 521, 192 N.E.2d 916; *People v. Hampton* (1969), 44 Ill.2d 41, 253 N.E.2d 385; *People v. Rodgers* (1971), 3 Ill.App.3d 85, 279 N.E.2d 72.

Thirdly, Kent contends that the trial judge's preliminary comments contained a "heed the majority" theme that "poisoned" the prospective jury against him. He objects to the following comments:

"Your verdict must be unanimous, so that when you begin your deliberations or throughout your deliberations you must always keep an open mind, that perhaps your first impression may not be the right impression. You may, you must listen to the opinions of your fellow jurors and in that way determine what your verdict will be. However, at the time of actually signing that verdict, that verdict must be your own. So that verdict must be yours at the time you sign the verdict."

When viewed in the full context of the proceedings, we cannot agree that the preliminary comments were improper. First of all, the foregoing remarks were concluded with language that emphasized individual responsibility for the verdict. We think that the overall impact of the entire statement was to indicate to the jury that they had a duty to heed their own conscience but that they could consider the opinions of their fellow jurors in arriving at their individual decisions.

Moreover, the court stated in *People v. Iverson* (1973), 9 Ill.App.3d 706, 709, 292 N.E.2d 908, 911:

"The test which we apply to the issue before us is whether, upon examination of all the facts, the language used in the instruction coerced or interfered with the deliberation of the jurors to the prejudice of the defendant. (*People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601; *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196; *People v. Richards* (1968), 95 Ill.App.2d 430, 237 N.E.2d 848.) The time when the instruction is given, whether as a part of the original series, or after a deadlock is found to exist, is a circumstance to be considered in the determination of the coercive effect of the language used."

As in *Iverson*, the comments to which Kent objects were given in the trial judge's original voir dire panel instructions and not to break a deadlocked jury. We conclude that any coercive effect of the "heed the

majority" language was sufficiently minimized and did not detract from his right to a fair trial.

The defendant's fourth contention is that the State failed to prove him guilty beyond a reasonable doubt. He asserts that the State's witnesses were "completely impeached" in view of the following discrepancies that were brought out at the trial: Officer Bass testified that defendant first produced a driver's license belonging to someone else but the police report omitted this and Kent was ticketed for failing to produce any driver's license; Officer Bass testified that defendant met the arresting officers halfway between the police car and the defendant's car before returning to his (Kent's) car to obtain identification while the police report stated that the defendant remained in his car and that the officers walked over to it to talk to the driver; and, the police report did not state that defendant told the arresting officers he had purchased the gun.

The evidence was more than sufficient to convict. (*People v. Davis* (1971), 3 Ill.App.3d 56, 278 N.E.2d 200; *People v. Zazzetti* (1972), 6 Ill.App.3d 858, 286 N.E.2d 745.) It is well settled that the effect of discrepancies in the testimony of prosecution witnesses is a matter to be considered by the trier of fact. (*People v. West* (1971), 3 Ill.App.3d 106, 278 N.E.2d 233.) Here, the inconsistencies were vigorously argued to the jury and the defendant was found guilty beyond a reasonable doubt.

■■■ A reviewing court will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Kelley* (1963), 29 Ill.2d 53, 193 N.E.2d 21; *People v. Sumner* (1969), 43 Ill.2d 228, 252 N.E.2d 534.) After a careful review of the record, we find that the jury's verdict of guilty was amply supported by the evidence.

■■ After oral argument but prior to opinion, defendant filed a motion to modify sentence under the Unified Code of Corrections, alleging that he was convicted under a Class 4 felony which carries a penalty of one to three years. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(b) (5).) Accordingly, we modify defendant's sentence from two to five years to not less than one year and not more than three years.

The conviction and sentence as modified are affirmed and the cause is remanded to the circuit court of Cook County with directions that the *mittimus*, modified as provided herein, issue in conformance with this opinion. *People v. Caritinos* (1973), 9 Ill.App.3d 782, 292 N.E.2d 899.

Judgment affirmed, sentence modified, and cause remanded.

BURMAN, P. J., and DIERINGER, J., concur.