THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERNELL HAMPTON, Defendant-Appellant.

First District (5th Division)   No. 62626

Opinion filed February 25, 1977.

James Geis and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Timothy Quinn, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of the murder of William Eskridge in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch..38, par. 9—1) and was sentenced to a term of imprisonment of not less than 18 years nor more than 36 years. He contends the trial court erred when it (1) stated his motion for discharge would toll his term for retrial, and (2) excluded and admitted certain evidence during the course of his trial.

Defendant's initial trial for this offense ended in a mistrial on June 7, 1974. At that time, he requested a copy of the report of proceedings from the first trial for use at any retrial. Thereafter, on June 20, June 24, June 28,

July 11, July 19 and August 1, 1974, the case was called for trial and was continued either on defendant's motion or by agreement of the parties. On August 5, 1974, defendant acknowledged receipt of the report and requested another continuance. Defendant answered ready for trial for the first time on September 9, 1974. The State then continued the retrial on that date and again on October 7, November 6 and December 2, 1974. On December 16, the trial court continued the case due to a crowded calendar which would not permit it to proceed at that time. The State continued the case on December 30, 1974, January 2, 1975, and January 3, 1975, due to alleged difficulties in locating State's witness Sidney Davis.

On January 6, 1975, although defendant answered ready for trial the State requested a continuance. The trial court denied the State's request. Thereupon the State answered ready for trial. Defendant then orally moved for a discharge based upon the State's failure to afford him a retrial within a reasonable time period, citing *People v. Aughinbaugh* (1973), 53 Ill. 2d 442, 292 N.E.2d 406. The State requested time to respond to the motion. After the trial court stated that the motion should have been in writing, it gave defendant the option of pursuing the motion, which would toll his term while the State obtained transcripts of the dates in question, or withdrawing the motion and proceeding immediately to trial. After a discussion between defendant and his counsel, defendant withdrew his oral motion for discharge.

The following pertinent evidence was adduced at defendant's retrial.

*For the State:*

*Alan Gilcrest*
At approximately 4 a.m. on October 15, 1972, he was standing under an awning in front of the Brown Derby Lounge near the intersection of 51st Street and Indiana Avenue. Defendant, who was known to him as "Tony" and whom he had seen three or four times in the previous six months, was standing four or five feet to his left. When Sidney Davis told them they were blocking the doorway, he walked east on 51st Street to Drexel Liquors for a sandwich. Defendant was not wearing a hat and he had a short natural haircut.

*Sidney Davis*
He owned the Brown Derby Lounge at 209 East 51st Street on October 15, 1972. He had known defendant for six or seven months and had last seen him about one week before. He knew defendant by the name of "Tommy." At about 4 a.m. defendant and Alan Gilcrest were standing in front of the entrance to the Lounge obstructing the patrons. Defendant was wearing brown pants and jacket, a dark shirt and a brown knit lid or

ski cap. He could not describe defendant's hair style because the knit cap covered most of defendant's hair.

As he was leaving, defendant stated that someone had been tampering with his car which was parked on Indiana Avenue. As they walked around the corner to investigate, they met two other men, but defendant said these men were not the ones who had been tampering with the car. Defendant's car had a coat hanger in place of an antenna. William Eskridge was standing at the bus stop on Indiana. Defendant took Eskridge by the arm and brought him to the car. At this time he was standing a couple feet from defendant and Eskridge and the lighting was good. Defendant said, "Let me tell you, this is my car and I don't want you f____g with it anymore." Defendant pulled a shiny handgun from some part of his body and hit Eskridge across the head with the gun. Eskridge did not speak and appeared to be helpless. As defendant struck Eskridge, the gun fired and Eskridge slumped over onto the car. He retreated and said, "Hey don't do that." Defendant fired two more shots directly at Eskridge. As he started back to the Lounge to call the police, he saw Eskridge fall to the ground and defendant walk around to the driver's seat of the car. Defendant and the car were gone when he returned to the scene.

Later that day Investigator Hawkins brought 10 to 12 photographs to his home. He identified defendant's picture as the man he knew as Tommy. On October 23, 1972, he identified defendant in a five man show-up.

During cross-examination, the State's objection to the question "Mr. Davis were you in fact aware that the State's Attorney's Office was attempting to locate you some weeks before this case went to trial?" was sustained.

*Edward Shalgos, M.D.*

He conducted an autopsy on the body of William Eskridge. The body had one bullet wound in the back of the neck and four areas where force had been applied resulting in slashes to the skin. The cause of death was the severance of the spinal cord due to the passage of the bullet.

*Sergeant Granville Hawkins, Chicago Police Department*

Over defendant's objection, he stated that he checked several names in the identification section of the department and also obtained several photographs including one of defendant. Sidney Davis identified defendant's picture. Defendant surrendered to him on October 23, 1972. The trial court sustained defendant's objection to the State's questions concerning whether it was common for someone who had committed a homicide to bring in a weapon when they surrendered to police. He identified a picture of a dark green 1966 Ford with a bent coat hanger for an antenna as being a picture of defendant's car.

*For Defendant:*

*Mary Bullock*

She lived with defendant and their son. On October 14, 1972, at approximately 5:15 p.m. she and defendant were walking near 53rd and Indiana Avenue. Someone, who she was unable to describe as being either male or female or black or white, approached from behind and struck defendant with a hammer on the head and the back. She took defendant to Provident Hospital for treatment. When they left the hospital four hours later, defendant was wearing a bandage on the right section of his forehead. Upon their return home they went to sleep. Defendant slept in his shorts. Although she is a light sleeper, nothing awakened her that night. The next morning when she awoke defendant was wearing the same shorts. Defendant was also known as Tony, but not as Tommy. Defendant never owned or wore a hat.

On cross-examination she admitted that the assailant did not attempt to take anything from her or from defendant and that she did not call the police to report this incident.

*Defendant Bernell Hampton on his own behalf*

He was also known as Tony. He owned a green, 1966 Ford Galaxie 500 with a coat hanger for an aerial in October 1972. He corroborated the testimony of Mary Bullock concerning an attack upon him and added that his assailant was a black male. In addition to the bandage on his forehead he also had a shaven area in the left back area of his head where he had previously received stitches. He admitted the bandage on his forehead was in back of his hairline. He did not own a gun nor wear a skull cap in October 1972. He had seen Alan Gilcrest in the vicinity on a rainy day approximately one week before.

During cross-examination, the following colloquy took place:

"Q. Do you know any reason—

DEFENDANT: Objection.

STATE: — why Alan Gilcrest would lie?

DEFENDANT: Objection; objection; move that the question be stricken and the jury instructed to disregard it. It's for this jury to determine, not Mr. Best.

THE COURT: I would sustain the objection.

STATE: Do you know Alan Gilcrest to any any —

DEFENDANT: Objection.

STATE: —bias or any prejudice against you?

DEFENDANT: Objection.

THE COURT: He may answer if he knows.

THE WITNESS: When you say bias or prejudice, that's a broad

statement for me, and I wouldn't want to tell the ladies and gentlemen of this jury a lie, and I wouldn't want to—

Q. Well, did Mr. Davis ever do anything that would indicate to you that he had any ill feelings toward you?

DEFENDANT: Objection; objection; ask your Honor to advise the jury to disregard the question.

THE COURT: The witness may answer.

THE WITNESS: Again, everything that shines just like gold, sir. I can't give you—

STATE: Come on now, Mr. Hampton, the question is did Mr. Davis—

DEFENDANT: Objection; asked and answered.

STATE: —the question is did Mr. Davis ever do anything which even in your mind would make you think he had any ill will toward you?

DEFENDANT: Objection; asked and answered.

THE COURT: I would overrule the objection; he may answer.

THE WITNESS: That's a hard question to answer, Counsel, again.

STATE: I said did he do anything even in your mind which would make you think or even believe that he had any ill will against you at all?

DEFENDANT: Objection to the form of the question and move that it be stricken and ask that the jury be instructed to disregard it.

THE COURT: Do you understand the question?

THE WITNESS: Yes, it's rather broad, your Honor, and it would probable take—

STATE: I mean it's—

THE WITNESS: —twenty minutes. I could very well give the answer, but this is not an answer that you just give every day. This is an answer that goes into race problems with black people. These are things that goes with people who academically are superior and people who are lower, this is a different thing altogether.

Q. Mr. Hampton—

Q. Is there anything that Mr. Davis ever did that would make you think, and even in your own mind, that he bore you any ill will whatsoever?

DEFENDANT: Objection; asked and answered.

THE COURT: Sustained."

*Charles Howard*

He was the manager of Drexel Liquors located at 51st and Prairie on October 14, 1972. The latest time that anyone could have purchased a sandwich at the delicatessen was two o'clock in the morning.

OPINION

Defendant contends the trial court erred when it stated his motion for discharge would toll his term for retrial. He argues that he was denied his right to a speedy trial because he was forced to either withdraw his motion or face further delays. In *People v. Aughinbaugh* (1973), 53 Ill.2d 442, 292 N.E.2d 406, the court affirmed the principle in *People v. Gilbert* (1962), 24 Ill. 2d 201, 181 N.E.2d 167, *cert. denied*, 371 U.S. 844, 9 L. Ed. 2d 80, 83 S. Ct. 76, that the right to a speedy trial following a mistrial is not measured by the strict application of another statutory period. In *Aughinbaugh* the court held the State's unexplained 120-day delay following a mistrial denied defendant his constitutional right to a speedy trial. (See also *People v. Bazzell* (1976), 40 Ill. App. 3d 208, 353 N.E.2d 153.) Since its decision in *Aughinbaugh* the court has also held that a retrial within 120 days satisfies defendant's right to a speedy trial absent exceptional circumstances. *People v. Dodd* (1974), 58 Ill. 2d 53, 317 N.E.2d 28.

■■ In the instant case defendant orally moved to be discharged on the 119th day of his term. The trial court had previously continued the case on its own motion due to a crowded court calendar. Such a delay is reasonable and cannot support defendant's motion. (*People v. Johnson* (1976), 36 Ill. App. 3d 122, 343 N.E.2d 177.) Similarly, the delays attributable to the State due to difficulties in locating witness Sidney Davis are not unreasonable. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634; *People v. Mason* (1969), 118 Ill. App. 2d 47, 254 N.E.2d 600.) Consequently, we must reject defendant's initial contention because the delays in this retrial were neither unexplained nor exceptional.

■■ Defendant also contends the trial court erred when it excluded and admitted certain evidence during the course of his trial. We note at the outset that the trial court sustained defendant's objections to the State's question to Investigator Hawkins concerning whether murder suspects generally surrendered with a weapon and to a factual misstatement by the State in closing argument. The trial court also instructed the jury to disregard all matters to which the trial court had sustained an objection. Unanswered questions and improper arguments do not constitute reversible error when the trial court sustains objections to them and instructs the jury to disregard them in their deliberations. (*People v. Daugherty* (1969), 43 Ill. 2d 251, 253 N.E.2d 389; *People v. Kent* (1973), 15 Ill. App. 3d 523, 305 N.E.2d 42.) The rulings in these two instances were not erroneous.

■■ Defendant argues that it was error to allow Hawkins to testify he obtained defendant's photograph from the police department's photographic unit after checking for defendant's name in the identification unit. When the identity of a defendant is at issue, the brief

mention of the source of a photograph directly related to identifying that defendant does not constitute reversible error. (*People v. Longstreet* (1974), 23 Ill. App. 3d 874, 320 N.E.2d 529.) Here, the photograph was not shown to the jury and Hawkins did not testify about defendant's guilt of any previous offenses. (See *People v. Oliger* (1975), 32 Ill. App. 3d 889, 336 N.E.2d 769.) Therefore, we do not believe the trial court erred when it overruled defendant's objection.

■■ Defendant next argues it was error to bar his cross-examination of Sidney Davis concerning whether he evaded a subpoena to testify at defendant's retrial. The scope of cross-examination rests within the sound discretion of the trial court and unless a clear abuse of that discretion resulting in manifest prejudice to defendant occurs, the court's ruling will not be disturbed. (*People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398, *cert. denied*, 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627.) In *Coughlin v. People* (1857), 18 Ill. 266, the court held improper an instruction which allowed the jury, if they believed a witness had secreted himself in order to avoid being recalled to testify, to consider this avoidance in determining the witness's credibility. Similarly, we believe that the reasons why a subpoena might be returned unserved are numerous and do not, by themselves, belittle a witness's credibility. We cannot say the trial court clearly abused its discretion by limiting the cross-examination to a disclosure that Davis was testifying pursuant to subpoena in the absence of some showing of manifest prejudice. Here, the court allowed defendant great latitude in inquiring into Davis's ability to observe and his ability to recall the events surrounding this cause. In light of these facts we hold the trial court did not abuse its discretion in limiting defendant's cross-examination of Davis.

Defendant finally argues it was error to allow the State during cross-examination to force him to either impeach or vouch for the credibility of its witnesses, Alan Gilcrest and Sidney Davis. The State in reply argues that defendant has failed to preserve this question for review by now arguing a different theory of error than he presented in the trial court. We note that the court sustained defendant's objection to the State's question concerning whether defendant knew of any reason why Gilcrest would lie. We believe the trial court's ruling protected defendant's right to a fair trial. (*People v. Kent* (1973), 15 Ill. App. 3d 523, 305 N.E.2d 42.) Defendant's remaining objections to questions regarding whether Gilcrest or Davis bore any bias or prejudice against him were not on the grounds that he was being forced to impeach or vouch for the credibility of the witnesses, but rather were either general objections which stated no grounds or specific objections on the grounds that the question had been "asked and answered," was "improper as to form," or was "impossible." General objections which have been overruled or specific objections

which were on entirely different grounds than the objector's theory on appeal preserve nothing for review. *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.

■■ Defendant's written post-trial motion alleged errors including "questions calling for hearsay answers with respect to any ill will on behalf of Davis or Gilcrest toward defendant and if he knew any reasons why they would testify falsely against him. These questions were argumentative and personally frustrating * * *." The State contends that we should be guided by the principle stated in *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76, and *People v. Sawyer* (1969), 42 Ill. 2d 294, 251 N.E.2d 230, *cert. denied*, 396 U.S. 928, 24 L. Ed. 2d 225, 90 S. Ct. 262, that the failure to specify objections in the trial court waives the issue for review. *People v. Sawyer* is inapposite to this issue however because it dealt with general and incorrect objections and not a failure to specify error in a post-trial motion. Similarly, a careful reading of *People v. Irwin* and the cases cited therein, *People v. Greer* (1964), 30 Ill. 2d 415, 197 N.E.2d 22, and *People v. Gratton* (1963), 28 Ill. 2d 450, 192 N.E.2d 903, shows that the appellants in those cases failed to specify the erroneous ruling in their motions and not that they specified the incorrect reasons or grounds for the ruling. Consequently, because the specific ruling itself was brought to the trial court's attention and because the ruling could affect defendant's substantial rights we reject the State's argument that it cannot be reviewed in this court.

■■ We held in *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450, that the cross-examination of defendant as to his opinion of the veracity of the State's witnesses constituted prejudicial error when considered together with prior cross-examination of defendant. We reasoned in *Hicks* that it is within the province of the jury when faced with conflicting testimony to determine which witnesses are telling the truth and that a defendant's opinion as to the veracity of the State's witnesses neither proved nor disproved his guilt or innocence. We believe that the same reasoning should apply to the analogous situation in this case where the defendant was questioned as to any ill will or bias on the part of the State's witness.

■■ Nonetheless, in *People v. Meeks* (1973), 11 Ill. App. 3d 973, 297 N.E.2d 705, *cert. denied*, 418 U.S. 905, 41 L. Ed. 2d 1153, 94 S. Ct. 3196, we held that although this type of cross-examination was improper, standing alone it did not constitute prejudicial error. Similarly, in this case we have examined this error in light of the entire record and we are convinced beyond a reasonable doubt that the trial court's ruling, though error, was harmless.

Finally, defendant has mailed documents to this court which he entitled as his original brief and a reply brief and which allege numerous errors

throughout all of the proceedings which preceded his ultimate conviction. In these documents he adopts the arguments of his court-appointed counsel and commends his attorney's competence. These documents fail to conform to the Rules of the Supreme Court both as to form and as to the applicable filing dates. Nonetheless, the State has responded to defendant's *pro se* arguments and we have, therefore, considered them in reaching our final decision. Because a full discussion of these matters would have no precedential value and would only serve to unduly lengthen this opinion, we hereby reject defendant's *pro se* contentions. See *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387.

For the reasons given we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.