UNITED STATES of America ex rel.
J. Patrick FLYNN,
Relator,

v.

Harold N. BUTLER, Superintendent Wall-
kill Correctional Facility,
Respondent.

No. 75 CIV. 1397 (MP).

United States District Court,
S. D. New York.

July 10, 1975.

James J. McDonough, Legal Aid Society of Nassau County, for relator, by Theodore Ruthizer, Mineola, N.Y.

Louis J. Lefkowitz, Atty. Gen., New York City, by Ralph L. McMurray, Asst. Atty. Gen.

POLLACK, District Judge.

This is a petition for a writ of habeas corpus by a state prisoner challenging the validity of his custody pursuant to a December 1973 conviction and sentence of first degree manslaughter in the death of his wife.

Petitioner, who testified in his own defense at trial, contends that the prosecutor's summation to the jury improperly commented on the petitioner's constitutional right to remain silent at the time surrounding his arrest.

The state contends that[1] (1) by testifying in his defense, petitioner waived his Fifth Amendment privilege as to all relevant matters, including impeachment on the basis of his post-arrest silence and statements, (2) a substantial portion of the allegedly prejudicial summation refers to petitioner's silence or statements at a time when the Fifth Amendment privilege had not yet attached, (3) the summation was a fair response to matters first raised by defense counsel, both on the direct examination of the petitioner and in summation, (4) even if there were error in the prosecutor's comments, it was cured by the trial judge's instructions to the jury, and (5) petitioner's counsel failed to object either during or at the close of the summations in order to preserve the point for appeal and habeas review.

For the reasons indicated below, the petition must be dismissed.

Following the death of his wife, petitioner apparently called the police, stating "Send police car to 66 Broadway . . . I just—I'm going to do myself in." The first officer on the scene approached the house, but was beckoned by the petitioner who had gone outside. The officer asked: "What is it? I have a call here," and petitioner responded, "I shot my wife. I shot my wife. I shot my wife. She's upstairs in bed." At a pre-trial suppression hearing, the trial court held that these statements were volunteered and thus admissible.

Two officers entered the house to investigate while a third remained outside with petitioner, and shortly thereafter, petitioner was asked in his living room, "What happened?". He replied, "I had an argument with my wife." The trial court suppressed this statement on the ground that it had been made without petitioner having been advised of his rights under *Miranda*. Once petitioner was formally advised of those rights and requested counsel, there was no further questioning.

At trial, petitioner testified in his own defense that he had accidentally killed his wife while he was attempting to unload a rifle after she had prevented him from committing suicide and that he had not mentioned this to the arresting officers because nobody asked him.

By way of anticipation, petitioner's counsel at trial suggested to the jury in his summation that the prosecutor might argue that if the death had really been an accident as the petitioner testified,

---

1. The State concedes that the petitioner has exhausted his state remedies, the Second Department having affirmed the conviction without opinion on January 6, 1975 and the Court of Appeals having denied leave to appeal on February 4, 1975.

he would have told the police that it was an accident when they arrived. Petitioner's counsel proceeded to argue that in the confusion of the moment there simply had not been any opportunity for petitioner to explain to the police, either before or after having been advised of his constitutional rights, that the death had been an accident.[2]

In his summation, the prosecutor contended, as defense counsel had anticipated, that if this really had been the horrendous accident that petitioner claimed, he surely would have said something to that effect when the police arrived. The prosecutor suggested that petitioner's testimony at trial that he had not done so because nobody asked him offended common sense.

The prosecutor reviewed the events of that evening, and as he proceeded from stage to stage, he pointed out that the petitioner had had the opportunity to tell the police that the death had been an accident. When the prosecutor was apparently about to comment on the petitioner's failure to say anything at a time after he had been advised of his rights under *Miranda*, the trial judge interrupted *sua sponte*, directed the prosecutor to move on to another subject, and instructed the jurors that they were not to draw any inferences because of the petitioner's silence, which instruction was reiterated in the charge.

Defense counsel did not object to the prosecutor's comments at any point during or after the summation. Following the Court's charge, he said at a side bar conference that he would have objected at the close of the summation if the trial judge had not himself interrupted the prosecutor.

The underlying question in this case is essentially one of characterization—is this a case of comment on "silence" within the special meaning of the Fifth Amendment or is it a case of comment on the variations between the tenor and content of statements made at different times?

█ Petitioner's contention that the prosecutor's comments were constitutionally improper is best considered by reviewing each of the opportunities for explanation alluded to by the prosecutor. The prosecutor initially argued that the petitioner had the opportunity to offer his explanation when the first policeman arrived on the scene. The trial court ruled, and petitioner apparently does not contest, that these statements were volunteered and thus admissible. Moreover, since petitioner actually made a statement at that time, albeit one which he claims was incomplete, the prosecutor's discussion of the variations in the content of the pre-trial and trial statements did not constitute comment on the petitioner's right to remain "silent" within the meaning of the Fifth Amendment. *See Agnellino v. State of New Jersey*, 493 F.2d 714 (3d Cir. 1974) (concurring opinions). *Compare United States v. Semensohn*, 421 F.2d 1206 (2d Cir. 1970). Thus the prosecutor did not transgress any federal constitutional guarantees at this stage.

██ The prosecutor then referred back to the petitioner's call to the police for assistance when the petitioner made no reference to an accidental death. This reference also raises no constitutional question both because petitioner's right to remain silent had not attached and because the reference was to variations in the contents of two statements.

The prosecutor next proceeded to the point where Patrolman Fontaine went into the house to investigate, having just been told by the petitioner that he had shot his wife, and Patrolman Romano remained outside with petitioner for two or three minutes. The prosecutor argued that the petitioner said nothing at all to Romano because there was nothing to say—petitioner had "just committed a stupid, senseless murder."

2. The relevant portions of the trial transcript were submitted to the Court at oral argument.

■■ Even assuming that petitioner's right to remain silent had theoretically attached at that point, the prosecutor's comment was not a constitutional infraction. Petitioner had chosen not to exercise that right, having already spoken with Officer Fontaine when he arrived at the scene and subsequently speaking to Officer Lazaro after they went back into the house. Comment on petitioner's silence during the several minutes between actual statements is thus not comment on the exercise of the constitutional right to remain silent. *Compare Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and *Oregon v. Hass,* 420 U.S. 714, 95 S. Ct. 1215, 43 L.Ed.2d 570 (1975) *with United States v. Hale,* 162 U.S. App. D.C. 305, 498 F.2d 1038, 1043 (1974), *aff'd* 421 U.S. 928, 95 S.Ct. 1653, 44 L. Ed.2d 85 (1975)[3]. The fact that petitioner had not yet been advised by the police of his right to remain silent is immaterial as long as the reference at trial was solely for the purpose of impeachment. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

■■ The prosecutor then moved on to Patrolman Lazaro's question inside the house—"What happened?" and petitioner's answer, "I had an argument with my wife." The prosecutor then argued that it offended common sense for petitioner to testify that he didn't say that the death was an accident because nobody asked. Again, the prosecutor was commenting on variations in statements, not on the petitioner's exercise of his right to remain silent *per se.* The fact that this statement was ordered suppressed by the trial judge with re-

spect to the prosecution's case in chief,[4] does not prevent it from being used as rebuttal evidence on the petitioner's credibility if and when he testified. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

The prosecutor finally moved to the stage where petitioner had been formally advised of his rights to remain silent and to the assistance of counsel and the police asked no further questions and petitioner made no further statements. Referring to the testimony of Detective Shaw, the prosecutor stated ". . . he told you about those rights and what was said and what the defendant answered; and here was the perfect opportunity for the defendant again—." At that point the trial judge interrupted the summation *sua sponte,* directed the prosecutor to move on to another subject, and immediately instructed the jury that no inference was to be drawn from the defendant's silence.

In the charge to the jury, the trial judge again reiterated that admonition. When petitioner's defense counsel requested at the side bar that the specific *Miranda* rights be read to the jury, the trial judge did so and again stated that no inference was to be drawn from the petitioner's remaining silent or requesting an attorney after being advised of those rights.

■ While the prosecutor's comment at this point may raise the question of comment on the petitioner's right to remain silent after having been formally advised of his constitutional right to do so, *see United States v. Semensohn,* 421 F.2d 1206, 1209 (2d Cir. 1970), this

---

3. The Supreme Court did not reach the constitutional issue in *Hale.* The Court affirmed on the alternate ground that the defendant's silence at the time of his arrest was not inconsistent with his exculpatory testimony at trial. Thus the defendant's "silence" lacked significant probative value and such evidence would present a significant potential for prejudice since the jury would be likely to assign more weight to it

than would be warranted. At all events, *Hale* is irrelevant to the disposition of the present case since in habeas corpus review of a state trial and conviction it must appear that the petitioner is detained in violation of the constitution.

4. The statement was actually introduced into the trial during the examination of the petitioner by his own attorney.

Court concludes that any error resulting from this particular comment was harmless beyond a reasonable doubt.

First, the prosecutor did not actually complete the comment because he was interrupted in mid-sentence by the trial judge. Second, the trial judge's intervention was forceful and the curative instruction was both immediate and pointed, as well as subsequently reinforced in the charge. Third, the marginal contribution to the verdict of the particular comment itself was necessarily extremely limited. The fact that the petitioner had been formally advised of his right to remain silent was initially brought out by petitioner's defense counsel on the cross-examination of Detective Shaw, not by the prosecutor. The fact that petitioner had exercised his right to say nothing further was initially brought out by defense counsel who later commented on it at some length in his summation. Thus the jury was already aware of the facts concerning petitioner's silence before the prosecutor began his summation.

Moreover, the prosecutor's comments on the petitioner's failure to offer his explanation that the death was accidental at each of the first four stages referred to above, as indicated, was entirely permissible quite apart from anything that defense counsel may have said. Thus every aspect of the petitioner's "silence" in failing to explain that the death was accidental was already properly before the jury before the prosecutor made the final comment which was cut short by the trial judge.

The petition for a writ of habeas corpus must accordingly be dismissed on the ground that petitioner is not detained in violation of the federal constitution. The prosecutor's comments with respect to the first four stages identified above did not transgress the constitution, and the comment with respect to the fifth stage was harmless error beyond a reasonable doubt.

So ordered.