THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE ALLEN, Defendant-Appellant.

Third District   No. 74-216

Opinion filed April 26, 1976.

STOUDER, J., dissenting.

James Geis and Richard Steck, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James Hinterlong and Russell Boothe, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial, defendant Eddie Allen was found guilty of the murder of his wife. He was sentenced to a term of imprisonment for not less than 18 years nor more than 50 years. The issues presented by his appeal are whether the cross-examination of defendant impermissibly infringed on his Fifth Amendment right to remain silent at the time of his arrest and whether an instruction on self-defense was improper.

The State's evidence showed that on the date of the offense, January 3, 1974, defendant and his wife were separated, and Mrs. Allen was residing with the Moores. At approximately 3 p.m., Mrs. Allen returned from work and defendant arrived at the Moore home shortly thereafter.

Mrs. Moore went to the bathroom to do some mopping, leaving defendant and his wife in the living room. She then heard Mrs. Allen run down the hall to the back door screaming that defendant had a gun. Defendant caught his wife at the back door, at which point Mrs. Moore heard a sound, which she described as "A blow, sort of like a crash." Mrs. Moore went to the back door and noticed that Mrs. Allen was bleeding from the back of her head.

Mrs. Allen went into the bathroom with Mrs. Moore, where the wound was cleaned. According to Mrs. Moore, defendant was asking a lot of questions and defendant's wife was "kind of incoherent" and was holding on to Mrs. Moore. Defendant and his wife then went into the living room where Mrs. Allen sat in a chair and defendant kneeled in front of her. Mrs. Moore began to call her husband from a telephone on the kitchen wall, where she could see both defendant and his wife. Before the call was completed, defendant started shooting at his wife. Mrs. Moore saw Mrs. Allen attempt to rise from the chair at the time defendant started to shoot.

Defendant took a step toward his wife, who was lying on the floor, pointed the handgun and attempted to fire the then empty weapon. Defendant said, "She is dead now. Call the police." Mrs. Moore was unable to make the call, so defendant notified the police.

State criminalists tested scrapings obtained from defendant's handgun, which were found to be human blood. The blood could not be typed, however, due to contamination.

Defendant presented several witnesses in his behalf in an attempt to show that the killing was in self-defense.

Both Mr. and Mrs. Moore testified for the defense. The substance of their testimony was that at approximately 3 a.m. on December 30, 1973, defendant had been at the Moore house with Mr. Moore when Mrs. Allen and Mrs. Moore arrived there. Defendant asked his wife where she had been, and she became hysterical and grabbed a steak knife. Mr. Moore wrestled the knife away from her, and Mrs. Allen then made a threat indicating that she wished to see defendant dead.

There was testimony that Mrs. Moore and Mrs. Allen had been with Mr. Lemons and Mr. King on the evening of December 29, 1973. During the course of the evening, the two men told Mrs. Allen that if she desired, they would have defendant killed.

Defendant testified that he purchased the handgun for his protection because his wife threatened to have him killed. He also testified to the argument at the Moore's on December 30, 1973, and the threat made by Mrs. Allen. He went to the Moore's on January 3, 1974, to meet his wife and to discuss a divorce. When he informed her that he knew of the two men and the threats, his wife ran into the kitchen and grabbed a butcher knife. A struggle then took place and his wife fell and struck her head against the kitchen door. After defendant and his wife went back into the living room, Mrs. Allen told defendant that if she got the chance she would kill him herself.

Defendant was nervous and reached into his pocket for a cigarette. Mrs. Allen said something about there being a gun in his pocket and reached for her purse. Defendant remembered jumping up and pulling the trigger of his gun once. He did not remember firing any other shots, nor did he remember pointing the empty gun at his wife's body and pulling the trigger. Over objection, defendant stated that he thought his wife had a knife or gun in her purse and that he was "scared to death."

When the police arrived at the house, defendant met Officer Melloy at the sidewalk. The officer asked what had happened and defendant replied, "I shot my wife." Defendant also told Officer Melloy that the gun was on a table in the house and that his wife was "hurt pretty bad."

Officer Melloy had previously testified for the State that defendant appeared very calm while making these statements. The officer had then

entered the Moore house and attempted to give first aid to Mrs. Allen. At this point, defendant was placed under arrest, and, after being given his *Miranda* warnings, he apparently made no further statements.

During the cross-examination of defendant, the following colloquy took place, over objection of defense counsel:

"Q. Now, Mr. Allen, when the police show up pursuant to your call on January 3, 1974, at 431 West 7th in Peoria, and you talked to Officer Melloy, you never mentioned any fear for your life did you?

\* \* \*

A. Would you repeat the question?

Q. When the police showed up at 431 West 7th on January 3, 1974 pursuant to your call, you never told them you were in fear for your life from your wife did you?

A. No.

Q. In fact, you never told any law enforcement officer this did you?

A. No, I didn't.

Q. In fact, the first statements regarding this are from the stand in this trial aren't they? \* \* \*

A. Yes.

Q. Now this King and Lemons that testified here, you never mentioned them before this trial did you?

A. No sir, I didn't."

In closing argument, the prosecutor made the following statement:

"Now, when, by the way, did the defendant first say self-defense? Did he say this to officer Terry Melloy, I just shot my wife, I had to do it, she came at me with a knife in the kitchen! Did he say that? Did he say, she was going into her purse, I thought she had a gun, I had to shoot her! Or did he even say, I shot my wife in self-defense. No, none of these. He said very calmly, according to Officer Melloy, I just shot my wife, she is pretty bad, she is in there, the gun is on the table. In a calm way." ⁻

■■ Defendant contends that on cross-examination the prosecutor's questions impermissibly referred to his Fifth Amendment right to remain silent at the time of his arrest. He points out that after he was placed under arrest and given his *Miranda* warnings, he remained silent.

To support his position, defendant cites *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133. In *Hale*, a defendant who had never made a statement to the police was forced to admit on cross-examination that he had not offered exculpatory information at the time of his arrest. The Supreme Court stated:

"If the Government fails to establish a threshhold inconsistency between silence at the police station and later exculpatory

testimony at trial, proof of silence lacks any significant probative value and must therefore be excluded." (Emphasis added.) 422 U.S. 171, 176, 45 L. Ed. 2d 99, 104, 95 S. Ct. 2133, 2136.

It is, of course, a well-established rule in Illinois that the State may not make use at trial of a defendant's silence at the time of arrest. In *People v. Lewerenz* (1962), 24 Ill. 2d 295, 299, 181 N.E.2d 99, our supreme court stated:

"[A]n accused is within his rights when he refuses to make a statement, and the fact that he exercised such right has no tendency to prove or disprove the charge against him, thus making evidence of his refusal neither material or relevant to the issue being tried."

Similarly, in *People v. Wright* (1st Dist. 1975), 32 Ill. App. 3d 736, 336 N.E.2d 18, a police officer testified that in response to police questioning, defendant stated that he had nothing to say. On cross-examination, the prosecutor caused the defendant to admit that he had never told the police or anyone about his claim of self-defense. The court, citing *United States v. Hale*, held that defendant's right to remain silent had been violated.

We believe that defendant's reliance on these cases is misplaced. These cases are concerned with the prejudicial use of a defendant's exercise of his Fifth Amendment right to remain silent. Defendant's argument overlooks the fact that he voluntarily made incriminating statements to the police prior to the time of his arrest, whereas in *Hale* and *Wright* the defendants had remained silent.

Officer Melloy testified to these statements and said that defendant's manner was calm. Defendant elected to take the witness stand and on direct examination, testified to the statements he made before his arrest and also testified that he thought his wife had a knife or gun in her purse. When asked by defense counsel what his mental state had been at the time of the shooting, defendant stated that he "was scared to death."

Having opened the door to the question of his state of mind and to the content of the statements he made to the police, defendant cannot foreclose a relevant inquiry into these matters on cross-examination. We believe the prosecutor's questions were properly permitted for purposes of impeaching defendant's credibility by showing the inconsistency or variance between defendant's pretrial and trial statements.

In *People v. Henry* (1970), 47 Ill. 2d 312, 320, 265 N.E.2d 876, our supreme court stated that an inconsistency in the literal sense is not always required for impeachment. The court cited the earlier case of *Carroll v. Krause* (2d Dist. 1938), 295 Ill. App. 552, 15 N.E.2d 323, where a witness testified that an auto in which the plaintiff was riding had but one headlight, although at an earlier inquest the witness had not mentioned this fact. The court in *Krause* held that the prior statement was admissible

for impeachment purposes, even though the witness had not been asked about the auto's headlights at the inquest, saying:

> "The rule is that the omission of a witness to state a particular fact under circumstances rendering it incumbent upon him to, *or likely that he would, state such fact, if true,* may be shown to discredit his testimony as to such fact." (Emphasis added.) 295 Ill. App. 552, 562.

In *People v. Kent* (1st Dist. 1973), 15 Ill. App. 3d 523, 305 N.E.2d 42, the defendant was tried for possession of a sawed-off shotgun. The arresting officer testified that at the time of arrest defendant stated he had purchased the weapon. Defendant testified that he had told the officer he had no knowledge of the shotgun being in the automobile, and that the shotgun in fact belonged to the passenger in defendant's auto, who had been holding defendant captive. On appeal, the propriety of the prosecutor's closing arguments was challenged on the same grounds as defendant asserts in the case before us. The court answered this contention as follows:

> "The evidence clearly indicates that [defendant] did not exercise his right to remain silent but voluntarily made a statement to the police * * *. Even if [defendant's] version is accepted, his initial denial of any knowledge of the events in question and his later assertion that he was a captive is a conflict by omission * * *.
>
> * * * [Defendant] did not remain silent: He voluntarily gave some information to the arresting officers but did not tell anyone that he was the victim of a crime until some seven weeks after he was arrested." 15 Ill. App. 3d 523, 525-26.

*United States ex rel. Flynn v. Butler* (S.D. N.Y. 1975), 397 F. Supp. 999, involved a habeas corpus review of a State conviction. The evidence showed that when police arrived at defendant's house pursuant to a call, defendant met them outside and said, "I shot my wife * * *. She's upstairs in bed." At trial, defendant testified that he shot his wife accidentally while unloading his rifle. In closing argument the prosecutor commented on the fact that, when defendant made the initial statements, he did not mention that the shooting was accidental. The court held that this argument was not an improper comment on defendant's right to remain silent, relying in part on *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643. Defendant had not remained silent, but had voluntarily made a statement, and the prosecutor was commenting on the variations in the content of the pretrial and trial statements. See also *Agnellino v. State* (3d Cir. 1974), 493 F. 2d 714 (concurring opinions).

On the basis of the foregoing, we do not find an infringement on defendant's right to remain silent. The evidence clearly indicates that defendant simply was not silent, but voluntarily made a statement to the

police at the time of the shooting. Thus the issue here is not the defendant's right to remain silent, or defendant's subsequent exercise of his Fifth Amendment rights after receiving the *Miranda* warning, but his credibility stemming from the variations in his statements regarding the shooting. Accordingly, we do not find that the cross-examination or closing argument impermissibly infringed on the constitutional protections afforded to defendant.

Defendant next complains of. People's Instruction No. 18, which is concerned with the defensive use of force by an initial aggressor. IPI Criminal 24.09.

Defendant's first contention is that, assuming defendant to have been the initial aggressor in the kitchen, the shooting that occurred in the living room was too remote in time to justify the instruction, citing *People v. Wilson* (1st Dist. 1972), 3 Ill. App. 3d 481, 278 N.E.2d 473.

Defendant's reliance on *Wilson* is misplaced. In *Wilson*, the first encounter between defendant and the victim was interrupted by the police, who talked with the two men and sent each in a separate direction. In the instant case the initial encounter in the kitchen and the shooting were interrupted only briefly when defendant's wife was holding onto Mrs. Moore in the bathroom and defendant was demanding that his questions be answered. Thus the two cases are factually distinguishable. More importantly, the issue in *Wilson* was whether there had been a sufficient "cooling-off" period to dissipate the sudden and intense passion necessary for voluntary manslaughter, whereas the issue in the instant case is self-defense.

■■ Defendant also contends that there is no evidence to indicate that defendant was the initial aggressor. He argues that he was the only eyewitness to testify as to the initial altercation in the kitchen, and his testimony was that his wife attacked him with a butcher knife and was injured in the ensuing struggle.

In contrast to defendant's testimony, however, Mrs. Moore testified for the prosecution that defendant's wife ran down the hall screaming that defendant had a gun. She heard a noise when defendant caught his wife at the back door and noticed the wound on Mrs. Allen's head. On rebuttal, Mrs. Moore testified that she did not own a butcher knife and further stated that after the shooting she did not see a knife on the floor in the kitchen or in the living room. The State also introduced testimony from State criminalists that scrapings from defendant's handgun consisted of human blood.

We believe that there was sufficient evidence to justify this instruction. The State's evidence circumstantially demonstrated that defendant was the aggressor and was in conflict with defendant's testimony. The record indicates that the court also gave, over objection by the State, defendant's

instruction No. 16 (IPI Criminal 24.06) which states the circumstances under which a person is justified in the use of force to defend himself. Thus the jury was instructed as to both hypotheses.

Under the circumstances of this case, therefore, we do not find prejudicial error in the giving of this instruction. The evidence was conflicting and the issue was properly submitted to the jury. *People v. Day* (2d Dist. 1972), 2 Ill. App. 3d 811, 277 N.E.2d 745; *People v. McBride* (1st Dist. 1970), 130 Ill. App. 2d 201, 264 N.E.2d 446.

Accordingly, the judgment of conviction of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I cannot agree with the majority opinion in respect to its holding that the cross-examination of defendant neither infringed upon his constitutional right to remain silent nor prejudiced his defense. Accordingly, I would reverse and remand for a new trial.

In the recent case of *United States v. Hale*, 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133, the Supreme Court, pursuant to its supervisory authority over the lower Federal courts, considered the question presented here. In *Hale*, the defendant was arrested after being identified by a victim of a robbery and advised of his right to remain silent. The defendant made no response to an officer when asked to explain how he had obtained money found in his possession. At trial, the defendant testified in his own defense and explained his possession of the money. On cross-examination, the prosecutor caused Hale to admit that he had not offered the exculpatory testimony to the police at the time of his arrest. The trial court instructed the jury to disregard the questioning.

Without reaching the constitutional question, the Supreme Court held, with no justices dissenting, that the probative value of defendant's pretrial silence was outweighed by the prejudicial impact of admitting the evidence.

Similarly, in *People v. Wright*, 32 Ill. App. 3d 736, 336 N.E.2d 18, the Illinois appellate court held, relying on *Hale* and the fifth amendment right to remain silent, that it was error to cross-examine the defendant about his silence. In *Wright*, the State elicited testimony in its case-in-chief regarding defendant's refusal to answer questions made by the police. On cross-examination, the prosecutor caused the defendant to admit that he had failed to inform anyone prior to testifying, including his attorney, of his claim of self-defense.

I believe that *Hale* and *Wright* support the view that the cross-examination of defendant in the instant appeal infringed upon his constitutional right to remain silent and prejudiced his defense.

The majority apparently believe that the cross-examination of defendant about his silence was permissible since this evidence possessed significant probative value. *Hale* and *Wright* are distinguished on the basis that here the defendant "voluntarily made incriminating statements to the police prior to the time of his arrest," whereas in those cases the defendants had remained silent.

The majority does not frame the issue in terms of the defendant's right to remain silent, or his exercise of his fifth amendment right after receiving the *Miranda* warnings. Instead, the majority believe the issue relates to defendant's "credibility stemming from the variations in his statements regarding the shooting."

The cross-examination of defendant, as set forth by the majority, reveals that the prosecutor's questions were not limited to refer specifically to defendant's failure to claim self-defense either before, immediately after, or at the time of his initially volunteered statement. Rather, the questions were framed broadly (*e.g.*, "* * * you never told any law enforcement officer this did you?"), so that the response elicited also related to defendant's failure to claim self-defense at a time when he had been formally advised of his constitutional right to remain silent. (*United States ex rel. Flynn v. Butler*, 397 F. Supp. 999 (S.D. N.Y. 1975).) Defendant's failure to make exculpatory statements while under arrest should not have been considered against him. Having been placed under arrest, he had the right to remain silent. See *United States v. Semensohn*, 421 F. 2d 1206 (2d Cir. 1970).

I believe the majority's reliance on *United States ex rel. Flynn v. Butler*, 397 F. Supp. 999 (S.D. N.Y. 1975), is misplaced. In fact, that case is clear authority for the position adopted here. In *Flynn*, the prosecutor, during closing argument, made reference to the testimony of a detective who had given defendant the *Miranda* warnings. When the prosecutor was apparently about to comment on the defendant's failure to say anything at a time after he had been advised of his rights under *Miranda*, the trial judge interrupted *sua sponte*, directed the prosecutor to move on to another subject, and instructed the jurors that they were not to draw any inferences from the defendant's silence, which instruction was reiterated in the charge. The court held these references to defendant's silence error, but not prejudicial. The reasons given were: (1) the prosecutor did not actually complete the comment because he was interrupted in midsentence by the trial judge; (2) the trial judge's intervention was forceful and the curative instruction was both immediate and pointed, as well as subsequently reinforced in the charge; and, (3) defendant's failure

to say anything after being advised of his *Miranda* rights was initially brought out by defense counsel who later commented on it at some length in his summation.

In *Flynn*, the court admitted into evidence two voluntary remarks made by defendant before the *Miranda* admonitions were given. The defendant testified in his own behalf at trial.

*Flynn* clearly supports the proposition that comment should not be made regarding a defendant's silence after he is advised of his constitutional right to remain silent, even where the defendant has made initial statements before *Miranda* admonitions are required.

I also believe the majority's reliance on the concurring opinions in *Agnellino v. State of New Jersey*, 493 F.2d 714 (3d Cir. 1974), is unwarranted. In approving various remarks made by the prosecutor during closing argument, neither concurring judge viewed the case as one "where the prosecutor commented unfavorably upon the defendant's 'silence'." Both concurring opinions refer to and permit comment by the prosecutor upon the differences in the statements made by defendant at trial and those made at the time of arrest, after the *Miranda* warnings were given. Therefore, these opinions as regards silence are not controlling, since this issue was not decisive. In fact, one concurring judge, Chief Judge Seitz, stated that prosecutorial comment on a defendant's silence after the *Miranda* warnings are given, without any statements made by defendant, would be impermissible.

The premise underlying the majority opinion is that "the prosecutor's questions were properly permitted for purposes of impeaching defendant's credibility by showing the inconsistency or variance between defendant's pre-trial and trial statements." This rationale can only apply if silence, under the circumstances, is an inconsistency. The authorities relied upon by the majority do not support this view, since they do not involve silence after the *Miranda* warnings were given.

The evidence regarding defendant's silence should have been excluded for two reasons: first, defendant's failure to say anything regarding his claim of self-defense during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication (*United States v. Hale*, 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133; and second, in any event, the defendant's silence was not inconsistent with his exculpatory testimony; defendant's admission was reasonably consistent with his defense at trial.

Long before the decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Illinois courts have recognized that there are valid reasons for maintaining silence and that silence maintained under appropriate circumstances is not an inconsistency which may be shown in

impeachment of later testimony. As stated by the court in *People v. Pfanschmidt*, 262 Ill. 411, 448-50, 104 N.E. 804:

"An admission or confession may be implied from the conduct of the party when charged with a crime or with complicity therein, or when statements are made in his presence affecting him, when the circumstances afford him an opportunity to act or speak in reply and men similarly situated would naturally deny the implied guilt or make explanations or statements. [Citations.] * * * If the accused is restrained from making a reply 'by fear, by doubts of his rights, by a belief that his security will best be promoted by his silence, then no inference of assent can be drawn from that silence.' [Citation.] If the accused says he refuses to answer because he is acting under the advice of counsel, or for any other valid reason, the evidence should not be admitted. * * * There is no basis in this record to support an argument that plaintiff in error in any manner acquiesced in the truth of the statements or assertions made in his presence in these various interviews. Would any reasonable man in like circumstances when he had been advised by his attorney time and again not to talk, be expected to reply to accusations of the kind made in these interviews? Manifestly not."

Subsequent cases have consistently held that evidence of silence maintained on advice of counsel is not admissible. See *People v. Lewerenz*, 24 Ill. 2d 295, 181 N.E.2d 99; *People v. Rothe*, 358 Ill. 52, 192 N.E. 777; *People v. Blumenfeld*, 330 Ill. 474, 161 N.E. 857.

In *Miranda v. Arizona*, the Supreme Court said, in discussing a defendant's right to remain silent:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his fifth amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." (384 U.S. 436, 468 N. 37, 16 L. Ed. 2d 694, 720 N. 37, 86 S. Ct. 1602.)

Under *Miranda*, an accused in custody has an absolute right to silence. Silence maintained upon advice of counsel, like silence maintained in exercise of the constitutional rights defined in *Miranda* is not an inconsistency which may be shown in impeachment.

The probative value of silence or refusal to speak depends on the common experience that an assertion of misconduct will spontaneously invite a denial or protest of innocence. In the instant appeal, the circumstances supporting exclusion of the evidence regarding defendant's silence are even more compelling than in those instances involving an assertion of misconduct. Here the evidence does not involve a refusal or failure to reply to or deny an accusation of misconduct, but

only silence. The prosecutor's questions on cross-examination, as set forth by the majority, demonstrate that no response by defendant was either expected or required by the police after he had been given the *Miranda* warnings. Since no denial or protest of innocence was expected or required by the police, the reasons for defendant's silence as having any tendency to impeach his credibility disappear.

Finally, I believe that the evidence of silence was improper even for purposes of impeachment. If such evidence were proper, the warning and advice required by *Miranda* would have to be expanded to provide not only that if the accused waived his right to remain silent whatever he said might be used against him, but also if he exercised his right to remain silent such fact could be used to attack or diminish his credibility if he elected to testify in his own behalf. As stated by the court in *Fowle v. United States*, 410 F. 2d 48, 54 (9th Cir. 1969), which was impliedly approved by *Hale*:

> "We simply cannot adopt an interpretation of the Fifth Amendment under which one exercising his right to remain silent upon and immediately after his arrest—a right which the Supreme Court has so earnestly sought to guaranty and preserve—is severely prejudiced by his recourse to that cherished right. It would be anomalous indeed if honorable law enforcement officers were required to elaborate upon the traditional fifth amendment warning and advise arrested persons, in effect: if you say anything, it may be used against you. You have the constitutional right to remain silent, but if you exercise it, that fact may be used against you."

For the foregoing reasons I respectfully dissent.