THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES CRUE, Defendant-Appellant.

Fourth District   No. 13651

━━━━

Opinion filed April 25, 1977.

GREEN, P. J., specially concurring.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Charge: murder. Jury trial. Conviction: voluntary manslaughter. Sentence: 5 to 20 years. Contentions on appeal: erroneous instruction on the use of force by an aggressor; State failed to prove defendant had not acted in self-defense; court erred in refusing to allow a character witness to testify for the defense.

Crue was charged by indictment with the murder of Roger Payne. He did not deny that he shot Payne, but argued that he had fired in self-defense. The events of the evening in question are sharply disputed. According to the prosecution witnesses, Crue had been arguing in the North End Tavern in Decatur with one of the other patrons and, upon leaving, invited some out for a fight. A few of the witnesses acknowledged that there had been comments on the relationship of Crue, who is black, with his girlfriend, who is white. These comments had been made, if not on the night in question, on previous nights. It can fairly be inferred from the record that all the participants in the events of the night were white, except for Crue and a friend, Willie Clark. The prosecution

witnesses are generally agreed that a group of people left the tavern after Crue, intending to fight. The group was headed to where Crue was standing behind his car when Crue fired two shots into the air and told everyone to stay back. Someone then said Crue was firing a blank gun. Shortly after this, Crue fired at Payne who was the closest to him. The prosecution witnesses all agree that nothing was thrown at Crue until after the shooting and that everyone had stopped moving after the warning shots.

Paula Schmidt, Crue's white girlfriend, testified that there had been continuous remarks and obscenities directed at Crue and herself during the time in the tavern. As they were leaving, one person made a final remark and Crue replied but did not invite the others out for a fight. As they got to the car, a crowd came out of the tavern yelling obscenities and throwing bottles. Ms. Schmidt could not find the keys to the car. Crue fired two warning shots and someone said that Crue was going to have to shoot him because he was going after Crue. She saw someone waving a gun and at least one person with a cue stick. Someone was coming towards them with a bottle and something shiny in his hand. She warned Crue who then shot him. Crue's account is very similar with the addition that when Paula warned him, he saw the guy throw a bottle. The person had a knife in one hand and said "I'm going to castrate you." Crue then fired in his direction.

The jury was instructed on murder, voluntary manslaughter, involuntary manslaughter and self-defense; he was convicted of voluntary manslaughter. His first contention is that it was error for the court to give the jury the instruction on self-defense by an aggressor (IPI Criminal No. 24.09), as well as the standard self-defense instruction (IPI Criminal No. 24.06). He argues that there was no evidence that he was an aggressor and that the instruction served to mislead the jurors. His contention is that language, however abusive, cannot be sufficient provocation so as to make a defendant the aggressor just as it is not sufficient provocation to reduce a killing from murder to manslaughter. (See *People v. Matthews* (1974), 21 Ill. App. 3d 249, 314 N.E.2d 15.) Therefore, he argues, even if it is established that he invited other patrons of the tavern out for a fight, his aggression is not established.

■■ If there is an evidentiary basis for the instructions, it is proper to give both the self-defense and the use of force by an aggressor instructions so that the jury may decide between the conflicting evidence and apply the correct law. (*People v. Allen* (1976), 37 Ill. App. 3d 619, 346 N.E.2d 486.) In the case before us, there is more than the verbal invitation to fight which might be considered by the jury. There is evidence that Crue fired his gun into the air twice and that after this, no one in the crowd advanced toward him. Witnesses testified that nothing was thrown

at Crue and his friends until after the shot that killed Payne. Therefore, there is an evidentiary basis beyond Crue's invitation to fight which supports the conclusion that Crue was the aggressor. The instruction was properly given.

■■ Next, defendant contends that it was not proved beyond a reasonable doubt that he had not acted in self-defense. Crue's brief emphasizes those portions of the testimony by himself and his girlfriend that would show Payne approaching him while brandishing a knife and making threatening remarks as the rest of the crowd was yelling and throwing rocks and bottles. However, there is substantial testimony that no one moved after the first shot and that no missiles were thrown before the shooting of Payne. The testimony presented a clear conflict on the facts critical to the issue of self-defense. Such a conflict was properly for the jury to decide. *People v. McClain* (1951), 410 Ill. 280, 102 N.E.2d 134.

■■ Finally, Crue urges that the court erred in refusing to permit one Earl Davies to testify to his reputation as a peaceful and law-abiding citizen. Even if the refusal were error, we do not think it was prejudicial since another character witness was permitted to testify. And no instruction was offered on the use of proof of reputation. The nature of the proffered testimony (that is, an abstract opinion of defendant's reputation in the community) would appear to minimize any possible prejudice.

Affirmed.

TRAPP, J., concurs.

Mr. PRESIDING JUSTICE GREEN, specially concurring:

I disagree with the determination of the majority that defendant's firing of a gun twice in the air while warning the advancing crowd to stay back constituted aggression and thus a foundation for the giving of IPI Criminal No. 24.09. I deem the evidence of defendant's challenge to others to fight, however, to be sufficient evidence to justify the giving of the instruction. IPI Criminal No. 24 is patterned after section 7—4 of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 7—4). Although mere words are not sufficient provocation to reduce a homicide to manslaughter *(Matthews)*, the comments of the committee that drafted section 7—4 indicated that mere words are sufficient to render one who later kills another to be an aggressor. Those comments as revised by Professor Charles H. Bowman state in part:

"However, if he voluntarily engages in a fight or in some other manner, by *words* or actions, provokes the use of force against

himself which apparently will not involve the use of deadly force, but unexpectedly is threatened with deadly force, he has a qualified right to protect himself by using deadly force; first, he must use any method which is reasonably available to him, to avoid the use of such force—'retreat to the wall,' as the qualification sometimes is expressed. [Citations.]" (Emphasis added.) Ill. Ann. Stat., ch. 38, par. 7—4, Committee Comments—1961, at 408-09 (Smith-Hurd 1972).