THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN JOHNSON III, Defendant-Appellant.

Second District   No. 2—91—1156

Opinion filed July 15, 1993.

Rolfe F. Ehrmann, of Ehrmann, Gehlbach, Beckman & Lee, of Dixon, for appellant.

Daniel A. Fish, State's Attorney, of Dixon, Brian L. Buzard, of Mt. Morris, and Jay Wiegman, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Following a jury trial in the circuit court of Lee County, defendant, John Johnson III, was found guilty of two counts of aggravated battery. The first count charged battery to a school official while located on school grounds (Ill. Rev. Stat. 1991, ch. 38, pars.

12—3, 12—4(b)(3) (now 720 ILCS 5/12—3, 5/12—4(b)(3) (West 1992))), and the second count charged battery causing great bodily harm (Ill. Rev. Stat. 1991, ch. 38, pars. 12—3, 12—4(a) (now 720 ILCS 5/12—3, 5/12—4(a) (West 1992))). Defendant was sentenced on count II to 30 months' probation, conditioned on his serving a six-month jail term and payment of a $1,000 fine, $682 in court costs, and $12,794.30 in restitution. Defendant filed a timely appeal of his conviction and sentence, raising the following issues: (1) whether the trial court erred in instructing the jury on the use of force by an initial aggressor; and (2) whether the trial court abused its discretion by imposing, as conditions of probation, a six-month jail term together with a fine, costs, and restitution.

The facts relevant to this appeal are as follows: Between 8 and 8:15 a.m. on May 12, 1991, George Taubenheim, the superintendent for the Ashton schools, and John Frattinger, the principal for the Ashton middle school, observed defendant drive a passenger car through a circular driveway in front of the school which was restricted to school bus use. Defendant had been occasionally employed as a substitute teacher for the Ashton school, and his wife, Rebecca Johnson, was a fifth-grade teacher at the Ashton school and also the president of the teachers' union. Defendant drove through the driveway and into the school's parking lot. Defendant went into the school's office, picked up his wife's paycheck, returned to the parking lot, and stopped to speak to a parent who was dropping off her children.

Several people were gathered near the school's parking lot, including Gaye Smith, the school's head cook; Debra Atkinson, an assistant cook; Connie Cater, a part-time school bus driver; Sherry Harris, a part-time bus driver; and Jack Krigbaum, the school's custodian. Smith observed Mr. Taubenheim approach defendant. She testified that "[h]e looked upset like something was on his mind." Smith stated that defendant and Mr. Taubenheim talked for a minute or two, and then defendant slapped Mr. Taubenheim's face hard and with an open hand. Smith stated that Mr. Taubenheim appeared stunned, sort of turned away, and then turned back around. Smith then saw defendant strike Mr. Taubenheim in the mouth with a closed fist, causing him to fall down. Before he was struck the second time, Mr. Taubenheim raised his hands in front of him to try to block the punch. Smith stated that Mr. Taubenheim tried to get up from the ground, but defendant repeatedly kicked him in the upper chest area. Eventually, Mr. Taubenheim was able to get his hand on a mirror of a parked van and pull himself partially up, but defend-

ant struck him in the eye with his fist causing Mr. Taubenheim to fall backwards "[l]ike a ton of bricks." Smith stated that Mr. Taubenheim never made a fist, swung, or kicked at defendant.

Connie Cater stated that when Mr. Taubenheim walked out to where defendant was standing he appeared upset and in a hurry. Cater testified that defendant and Mr. Taubenheim talked for a minute or two, Mr. Taubenheim pointed his finger towards the front of the school where the buses unload, and then defendant slapped him. Mr. Taubenheim grabbed his face in surprise, and defendant hit him again, causing Mr. Taubenheim to fall to the ground. While Mr. Taubenheim was on the ground trying to get back up, defendant repeatedly kicked him. Cater testified that Mr. Taubenheim was finally able to get up, but defendant punched him one last time in the face, by his eye, causing Mr. Taubenheim to fall back onto the pavement. Cater stated that Mr. Taubenheim never raised a fist, swung, or kicked at defendant.

Susan Harris stated that when Mr. Taubenheim walked up to defendant he looked angry. She saw them talking in raised voices, and she stated that "Mr. Taubenheim's hands were kind of up in [defendant's] face." Harris stated that his hands were open, and moving back and forth in front of defendant's face. Harris testified that defendant hit Mr. Taubenheim in the face with his fist, causing him to fall backwards against a parked van. Defendant punched Mr. Taubenheim in the face again and kicked him in the chest. During this time Harris stated that Mr. Taubenheim was supporting himself against the van. She glanced away for a second, and when she looked back Mr. Taubenheim was on the ground. Harris stated that Mr. Taubenheim never raised a fist, swung, or kicked at defendant.

Debra Atkinson stated that when Mr. Taubenheim approached defendant, "[i]t looked like something was on his mind, bothering him." The two began talking, and then Atkinson saw defendant slap Mr. Taubenheim. Mr. Taubenheim reacted by holding his face, and defendant continued to hit him again in the face, causing Mr. Taubenheim to fall to the ground. Defendant kicked Mr. Taubenheim in the stomach several times while he was on the ground, and Atkinson saw Mr. Taubenheim try to block the kicks. After defendant stopped kicking, Mr. Taubenheim got up, and defendant punched him in the eye. After being struck Mr. Taubenheim fell straight backwards, and Atkinson heard his head strike the pavement. Atkinson testified that Mr. Taubenheim never raised a fist, swung, or kicked at defendant.

Jack Krigbaum testified that he saw Mr. Taubenheim and defendant talking in the parking lot but did not see the fight start. The only things Krigbaum overheard were Mr. Taubenheim saying, "John, John," and defendant saying, "You S.O.B." He stated that he heard a couple of smacks, turned around and saw Mr. Taubenheim trying to straighten up against a van. Although Krigbaum did not see what caused Mr. Taubenheim to fall against the van, he stated that defendant was pretty close to Mr. Taubenheim, and no one else was in the area at that time. Krigbaum testified that as Mr. Taubenheim began to straighten up defendant got close to him again and punched him in the face, causing Mr. Taubenheim to fall to the pavement. Krigbaum described the sound of Mr. Taubenheim's head striking the pavement as "just real loud." Krigbaum stated that he went out to the parking lot and "told [defendant] to back off; he had enough, so [defendant] backed off."

George Taubenheim stated that he and Frattinger observed defendant drive his vehicle through the restricted driveway while children were present. Taubenheim eventually went through the cafeteria, out the back door and walked over to where defendant was standing in the parking lot. Taubenheim said to defendant, "I'd like to have a moment of your time please to talk to you concerning our posted sign prohibiting traffic through the driveway between 8:00 and 8:30." He then informed defendant about the signs, and defendant tried to explain that he was unaware of the signs and any restrictions concerning the driveway. Taubenheim testified that he pointed to the signs and informed defendant "that we would like to keep traffic out of the driveway because of the safety of the kids *** if you persist in doing this I will have to call the Sheriff's Department and notify them of the incident." Taubenheim stated that the only movement he made with his hands was to point over defendant's shoulder at the posted sign located behind him. Taubenheim stated that the next thing that occurred was defendant either slapping or punching him. Taubenheim responded, "What the hell do you think you're doing," and the next thing he remembered was waking up in the hospital. Taubenheim denied ever raising a fist, swinging, or kicking at defendant.

Defendant admitted driving through the restricted driveway, parking his car in the school's lot, going to the school's office, picking up his wife's paycheck, and returning to the parking lot. He testified that he passed Mr. Taubenheim when he was inside the school, but neither spoke to the other. When he returned to the parking lot, he spoke with a parent dropping off her children for

school. Defendant stated that when he turned to head towards his car, Mr. Taubenheim was standing 10 to 15 feet away from him. Mr. Taubenheim made a comment about the restricted parking zone, and defendant testified, "I kind of just sloughed him off. I said, you know, so what." Defendant stated that Mr. Taubenheim looked really angry, and "[h]e came kind of rushing at me and he was, you know, in an outrage type attitude and I just couldn't understand why." Defendant stated that Mr. Taubenheim's hands were open and up in front of him at chest height, about shoulder width apart. Defendant testified that Mr. Taubenheim came "[e]xtremely close and in the manner he was approaching me I thought for sure he was going to lay hands on me or hit me. *** Well, when he got right in my face or real close within, you know, say maybe a foot or two I took a swing and hit him."

Defendant denied initially slapping Taubenheim, stating that he cocked his arm before delivering the initial punch. Defendant testified that Mr. Taubenheim backed up and came at him again. Defendant admitted punching Taubenheim a second time, knocking him to the ground. Defendant testified that he told Mr. Taubenheim, "Stay down," but when Mr. Taubenheim continued to try to get up, defendant "kicked him in the butt." After being kicked, Mr. Taubenheim continued to try to get up, so defendant hit him one more time, after which "[h]e fell back and he didn't try to get up any more so I didn't try to—I didn't pursue it any more." Defendant admitted that Mr. Taubenheim never struck him, cocked his arm back as if to swing at him, or swung his leg back as if to kick at him.

At the jury instruction conference defendant proposed that the following instruction be given to the jury on self-defense: "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force." The court refused this proposed instruction, giving instead court's instruction No. 1, which stated as follows:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of force.
>
> However, a person is justified in the use of force which is intended or likely to cause great bodily harm only if he reasonably believes that such force is necessary to prevent great bodily harm to himself or another." See Illinois Pattern Jury

Instructions, Criminal, No. 24—25.06 (2d ed. 1981) (hereinafter IPI Criminal 2d).

Over defense objection, the court also gave court's instruction No. 2:

"A person who initially provokes the use of force against himself is justified in the use of force if the force used against him is so great that he reasonably believes he is in imminent danger of great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause great bodily harm to the other person." See IPI Criminal 2d No. 24—25.09[1].

Over defense objection, the trial court also gave State's instruction No. 20:

"A person is not justified in the use of force if he initially provokes the use of force against himself with the intent to use that force as an excuse to inflict bodily harm upon the other person." IPI Criminal 2d No. 24—25.11.

The jury returned guilty verdicts on both counts of the complaint. The trial court subsequently entered judgment on count II and sentenced defendant to a term of 30 months' probation with conditions including: (1) a six-month jail term, and (2) a fine of $1,000, court costs of $682, and restitution of $12,794.30.

Defendant claims that the trial court erred in instructing the jury and permitting the State to argue that defendant had a duty to exhaust every reasonable means of escape before his own use of force. The State responds that the trial court properly instructed the jury on the issue of self-defense.

■ Initially, we note that defendant's proposed self-defense instruction was wholly inapplicable to the circumstances of this case. Count II of the complaint charged that defendant knowingly, and without legal justification, committed a battery to Mr. Taubenheim causing great bodily harm. The nature and elements of this charge required that the jury be instructed as to what circumstances would justify defendant's use of force likely to cause great bodily harm. Defendant's tendered self-defense instruction was incomplete in this regard. Thus, not only was the trial court correct in giving IPI Criminal 2d No. 24—25.06 with the second paragraph, but also it would have been error to do otherwise. The instruction given properly advised the jury of the law of justifiable use of force as set out in section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 7—1 (now 720 ILCS 5/7—1 (West 1992))).

The next question is whether it was also proper for the trial court to give court's instruction No. 2 (IPI Criminal 2d No. 24—25.09), which requires a person who has initially provoked the use of force against himself to exhaust reasonable means of escape before responding to the force used against him. Defendant's argument on appeal initially suggests that, by giving this instruction, the trial court implicitly instructed the jury that defendant was the initial aggressor. We disagree. The testimony at trial reflects some dispute concerning which of the two men was the initial aggressor. It is undisputed that defendant struck the initial blows and that he administered additional blows to Taubenheim during the course of the altercation. Defendant, on the other hand, claimed a justification for defending himself, first, as an angry Taubenheim initially came toward him and, later, as Taubenheim attempted to return to a standing position.

■ The jury is the sole judge of the credibility of the witnesses and the weight and sufficiency of the evidence, and it is responsible for resolving any factual disputes which arise therefrom. (*People v. Hendricks* (1990), 137 Ill. 2d 31, 65.) Identifying the initial aggressor was a factual question for the jury to resolve. (See *People v. Crue* (1977), 47 Ill. App. 3d 771, 773-74.) Further, it was for the jury to consider whether defendant's actions were likely to cause great bodily harm, and, if so, whether they were taken in self-defense based upon a reasonably perceived, imminent danger of great bodily harm. The jury might have believed from the evidence that defendant's actions provoked Taubenheim to threaten the use of force at some point during the incident. When there is a question as to whether a defendant or the victim was the initial aggressor, it is appropriate to give this instruction, and to do so does not erroneously assume that the defendant was the initial aggressor. Where, as in the present case, it is given with an additional instruction concerning justifiable use of force principles, the jury is able to resolve the issues under either hypothesis. See *People v. Ellis* (1982), 107 Ill. App. 3d 603, 614.

■ Section 7—4(c)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 7—4(c)(1) (now 720 ILCS 5/7—4(c)(1) (West 1992))) provides that the defense of justifiable use of force is not available to a person who initially provokes the use of force against himself, with the intent to use such force as an excuse to inflict bodily harm upon the assailant; or otherwise initially provokes the use of force against himself, unless "[s]uch force is so great that he reasonably believes that he is in imminent danger of death or great

bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant." Although defendant relied at trial on a claim of defense of his person, he now presents on appeal the unique contention that section 7—4(c)(1) was inapplicable in the present case and that it was error for the court to instruct the jury upon it, because Taubenheim never employed any force against defendant during the incident. Defendant apparently argues that this section applies only to instances in which combatants mutually exert actual physical force against one another. The only authority defendant offers in support of his argument is a general reference to *People v. Townsend* (1985), 136 Ill. App. 3d 385, and *Ellis* (107 Ill. App. 3d 603). We find nothing in either case that provides even remote support for defendant's restrictive reading of section 7—4(c)(1).

The law provides, and defendant concedes, that if an initial aggressor commits a battery to another individual, and this victim responds by exerting actual force against the aggressor, then the aggressor is justified in employing further force in self-defense only if he is threatened with death or great bodily harm and has no reasonable means of escape. But, under defendant's perception of the law, if the victim does not exert force, but only *threatens* retaliation, the aggressor would be lawfully justified in continuing his assault with no additional duty to first retreat. Such an interpretation would punish victims who, through self-restraint or incapacity, threaten to respond but fail to inflict injury upon their assailants. It is clear from both legislative commentary and case law that section 7—4(c)(1) encompasses *threats of force* as well as the actual exertion of force. (See Ill. Ann. Stat., ch. 38, par. 7—4, Committee Comments—1961, at 400 (Smith-Hurd 1989) ("Each of the three preceding sections of this article [720 ILCS 5/7—1 to 5/7—3 (West 1992)] has assumed that the person using force in defense has not committed an unlawful act which has inspired the use *or threat of force* against him, and has not otherwise provoked such force") (emphasis added); *People v. Barnett* (1977), 48 Ill. App. 3d 121, 123-25; *Crue*, 47 Ill. App. 3d at 773-74.) The statute's use of the phrase *"imminent danger* of death or great bodily harm" further corroborates our interpretation. (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 7—4(c)(1) (now 720 ILCS 5/7—4(c)(1) (West 1992)).

■ In the present case, defendant argued to the jury that because of Mr. Taubenheim's size, angry manner, and continued attempts to rise during the heat of the altercation, defendant could

reasonably believe himself to be in imminent danger of an unlawful use of force by Taubenheim likely to cause great bodily harm. In view of the strong evidence supporting the State's position that defendant was the initial aggressor, we conclude that the jury would not have been equipped to evaluate this defense argument without the guidance of an instruction explaining the legal limitations on the right of an initial aggressor to exert force in response to retaliatory efforts by the victim. Had the trial court not given court's instruction No. 2 (IPI Criminal 2d No. 24—25.09), the applicable law would have been misstated, and the jury might have mistakenly concluded that it could acquit defendant on count II by a mere finding that at the moment of striking the particular blow which inflicted great bodily harm defendant reasonably believed that the force he used against Taubenheim was necessary to prevent imminent great bodily harm to himself, regardless of whether defendant was the initial aggressor. Thus, contrary to defendant's assertions, the principles of section 7—4(c)(1) were applicable under the facts presented in this case, and court's instruction No. 2 was appropriately given.

■ Defendant also contends that the trial court erred by giving State's instruction No. 20 (IPI Criminal 2d No. 24—25.11) because it was "inapposite to the facts of the instant case." This instruction stated: "A person is not justified in the use of force if he initially provokes the use of force against himself with the intent to use that force as an excuse to inflict bodily harm upon the other person." (IPI Criminal 2d No. 24—25.11.) Specifically, defendant argues again that no evidence was presented of any force by Mr. Taubenheim against defendant. Although we have already rejected this reasoning in discussing a related issue, we further note that defendant failed to raise this issue in his post-trial motions. As recently reemphasized by the Illinois Supreme Court in *People v. Ward* (1992), 154 Ill. 2d 272, to preserve properly an issue for review, *both* a trial objection *and* a written post-trial motion raising the issue are required. The failure to so preserve the issue operates as a waiver of the right to raise the issue on review. (*Ward*, 154 Ill. 2d at 293.) We conclude that defendant has waived this point for review. In any event, we note parenthetically that the trial court correctly gave this instruction in view of the witnesses' accounts of defendant's initially slapping Mr. Taubenheim.

Defendant also argues that the trial court abused its discretion in imposing a sentence of probation including "mixed" conditions of a six-month jail term and payment of a fine, costs and restitution.

The central thrust of defendant's argument is that the total amount of the fine, costs, and restitution exceeds his ability to pay, given that he earns only $1,880 a month for 10 months a year as a school teacher and has expenses of $1,864 a month, and because he will likely lose his job if forced to serve a six-month jail term, and will accordingly be unable to pay. The State responds by noting that the defendant posted a $2,500 bond which was ordered to be deducted from the total amount he owes. It argues, therefore, that defendant has exaggerated the amount which must be paid and that the trial court sentence was properly imposed.

■ Defendant concedes that the determination and imposition of a sentence has long been held to be a matter resting within the sound discretion of the trial court, and the standard of review is whether the trial court abused its discretion in imposing the sentence. (*People v. Younger* (1986), 112 Ill. 2d 422, 427; *People v. Kaminski* (1993), 246 Ill. App. 3d 77, 83.) As noted by both the State and defendant, an order of restitution is not rendered invalid merely because a defendant is also ordered to serve a jail term. (*People v. Lambert* (1990), 195 Ill. App. 3d 314, 334.) Restitution is intended to provide crime victims with compensation while a defendant is on probation and is able to work. (*People v. Rupert* (1986), 148 Ill. App. 3d 27, 29.) Between the date of the incident underlying this case and the sentencing hearing, held less than five months later, defendant demonstrated that he is capable of obtaining gainful employment by securing a job as a school teacher in Houston, Texas. We also note that defendant has been given until the end of the probationary period to pay the fine, costs, and restitution. Although defendant's sentence will result in some hardship, it does not impose an impossible financial burden. (See *Rupert*, 148 Ill. App. 3d at 29.) We cannot say, in light of the seriousness of this offense and the substantial harm and cost which it imposed upon Mr. Taubenheim, that the court abused its discretion in sentencing defendant.

For the foregoing reasons, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

INGLIS, P.J., and COLWELL, J., concur.